## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| NNG, Kft., a Hungarian corporation,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSAL ELECTRONICS, INC., a Texas corporation and PYAR ALI CHARANIA, an individual,<br><br>    Defendants. | CIVIL ACTION NO. 4:16-cv-3644<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff NNG, Kft. ("NNG" or "Plaintiff"), for its Complaint against Defendants Universal Electronics, Inc. ("Universal") and Pyar Ali Charania ("Charania") (together, "Defendants" and each individually a "Defendant"), alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for federal copyright infringement, trademark infringement and counterfeiting, and violations of the Digital Millennium Copyright Act, arising out of Defendants' piracy of NNG's "iGo" software, Defendants' circumvention of NNG's security measures, and Defendants' unauthorized use of NNG's "iGo" trademarks.

## PARTIES

2. Plaintiff NNG, Kft. is a corporation organized under the laws of

Hungary, with its principal place of business at Szépvölgyi út 35-37., Budapest, Hungary H-1037.

3.      Defendant Universal Electronics, Inc. (defined above as "Universal") is a Texas corporation whose principal place of business is in Houston, Texas.

4.      Defendant Charania is the President of Universal and is a resident of the State of Texas.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1338, and 2201, because NNG's claims against Defendants arise under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., and the Lanham Act, 15 U.S.C. § 1051 *et seq*.

6.      This Court has personal jurisdiction over Defendant Universal, because it is a Texas corporation with its principal place of business in Texas, and over Defendant Charania, because he is a resident of the State of Texas.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because (1) Defendant Universal resides in this judicial district and all Defendants are residents of the State of Texas, in which this district is located; and, alternatively, (2) a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

8.    Plaintiff NNG is a global company that develops navigation and infotainment systems for automotive companies around the world.   NNG has mapped over 190 countries and its software is offered in 50 languages.   NNG software has been shipped in more than 20 million units globally and the company has partnerships with more than 150 hardware manufacturers worldwide.   NNG has 12 offices and 4 auxiliary offices on 6 continents, and nearly 1,000 employees.

9.    NNG owns several United States copyright registrations for various versions of its navigation software (the "Copyrighted Works") as listed in the table below:

| Title of Work | Registration Number | Author | Completion Date | Registration Date |
|---|---|---|---|---|
| iGo 2008 | TX0007685142 | NNG Kft | 2007 | 5/29/2013 |
| iGo Amigo | TX0007685141 | NNG Kft | 2009 | 5/29/2013 |
| iGo Primo | TX0007685140 | NNG Kft | 2010 | 5/29/2013 |
| iGo Primo 9.6.2.202130 | TXu001912433 | NNG Kft | 2011 | 10/7/2014 |
| iGo Primo 9.6.2.209584 | TX0007926787 | NNG Kft | 2011 | 10/7/2014 |

10.    NNG employs technological protection measures that control access to the Copyrighted Works. The protection measures verify that the software is licensed to run on the devices on which it is installed.   If the software is not licensed, it will not run.

11.    NNG has a security and device enabling procedure that it follows

whenever a potential customer wants to use its proprietary software on a device. The potential licensee must send two physical devices to NNG for NNG to port the software and test the device.  After the porting and testing are conducted by NNG, the customer can order the licenses by sending a signed purchase order to NNG. Upon the receipt of the purchase order, NNG sets up the license pool and sends a customized version of the software to the device manufacturer with an invoice to the licensee for a specific number of licenses.  After receiving the authorized customized software and the license pool is opened, the manufacturer is then allowed to download from the pool and install the software on the hardware devices.  Each license is locked to a unique hardware ID (via a SD card ID or device ID), so the license always verifies whether it is installed on the appropriate hardware.

12.    Since as early as 2005, NNG has sold its navigation software under various "iGo" trademarks and related marks, including "IGO MY WAY," "IGO 8," "IGO AMIGO," and "IGO PRIMO."  The related marks include its Speech Bubble Logo, seen below:



13.    The latest version of NNG's navigation software is sold under the mark IGO PRIMO.

14.   NNG owns the following federal trademark registration for its IGO PRIMO mark:

| Mark | Registration No. | Registration Date | Goods / Services |
|------|------|------|------|
| IGO PRIMO | 3,883,494 | November 30, 2010 | Computer programs and software for use in fixed or handheld microcomputers enabling navigation by the use of global positioning systems, in Class 9 |
|  | 3,546,985 | December 16, 2008 | Computer programs and software for use in fixed or handheld microcomputers enabling navigation by the use of global positioning systems (GPS) data in Class 9 |

15.   NNG also owns common law trademark rights in its Speech Bubble Logo, which is used in commerce in connection with its award-winning navigation software and services.  Plaintiff NNG's registered and common law trademarks described above are collectively referred to as the "iGo Marks."

## DEFENDANTS' ACTIVITIES

16.   Defendant Universal is a manufacturer and distributor of automotive audio and video electronics products, such as amplifiers, speakers, DVD players, and "head units," which is the command center for car audio and video systems. Universal sells its products under the TVIEW brand.  Universal sells its products to retailers such as MultiWave Video who then resell to consumers through, among others, eBay.

17.   All of the head units sold by Universal with navigation functionality

include navigation software. The navigation software is essential to the functionality of the navigation features of those devices.

18.    NNG learned that Universal has been selling head units containing unlicensed "cracked" copies of NNG's iGo software on devices marketed under Universal's TVIEW brand.

19.    For example, on or about May 20, 2016, NNG ordered and subsequently received one TVIEW brand D93TSG 9.3" Single-DIN Touchscreen Receiver from MultiWave Video through eBay.  The device came with a single micro-SD card.  Inspection of the micro-SD card revealed that it contained an unauthorized "cracked" copy of NNG's iGo Primo navigation software, version 9.2.1.178658.  The executable portion of the software had been modified to circumvent the software's technical copyright protection measures and permit the software to operate on the device.  When the device was activated, it displayed NNG's IGO PRIMO trademark, as shown below:



20.     The "About" menu in the navigation software on the TVIEW device displayed the following image, identifying the software as iGo version 9.2.1.178658, dated February 9, 2013, and again used the iGO PRIMO mark:



21.     Upon information and belief, Universal installed or directed the installation of pirated iGo software on numerous units ("Infringing Units").

22.     The pirated iGo software includes, on each device, (a) a version of the Copyrighted Works, and (b) a component of code that circumvents the protection measures of the version of the Copyrighted Works present on that device (the "Circumvention Component").  Every time the navigation software on one of the Infringing Units is activated, the version of the Copyrighted Works checks to verify it is properly installed, as described above.  Each time, the Circumvention Component circumvents this protection measure verification and allows the iGo software to run on the device.   As a result, a circumvention of NNG's technological protection measures happens each time the navigation software on one of the Infringing Units is activated.

23.     Upon information and belief, Universal sold the Circumvention Component on each and every Infringing Unit.

24.     Upon information and belief, Universal knew at the time that it manufactured and sold the Infringing Units that the iGo software installed on the Infringing Units was pirated.  Indeed, Universal has been in business for more than 30 years.   Universal touts its "in-house" approach to product research and development through employing acoustical, electronics, mechanical and software engineers.  Universal characterizes itself as "one of the few true manufacturers of car audio and video products in the United States" and it avoids traditional pre-fabricated or generic "catalog ordered" products.

25.     Upon information and belief, Defendant Charania, who is the President of Universal, either personally participated in Universal's infringement or was the moving, active conscious force behind the company's infringement. Alternatively, upon information and belief, Charania supervised Universal's infringing conduct and had the right and ability to discontinue the infringing conduct.    Alternatively, upon information and belief, Charania benefited financially from Universal's infringing conduct, including from the greater revenue and profits that Universal was able to earn as a result of its use of pirated iGo software.

26.     The trademarks displayed on the navigation splash pages on the Infringing Units are identical to NNG's iGo Marks.  Universal's use of counterfeits of the NNG iGo Marks was and is likely to cause confusion, mistake, or deception among consumers as to the source or origin of the navigation software on the Infringing Units.

27.     Upon information and belief, Universal's customers have complained that the iGo software on the Infringing Units cannot be upgraded because it was pirated iGo software.

## COUNT I

### (Direct Copyright Infringement, 17 U.S.C. § 501 *et seq.*, against Universal and Charania)

28.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

29.     At all times relevant hereto, Plaintiff NNG has been the owner of the copyrights in the Copyrighted Works.

30.     Plaintiff NNG owns valid copyright registration certificates from the United States Copyright Office for the Copyrighted Works at issue in this matter.

31.     Defendants have reproduced and distributed the Copyrighted Works or derivatives of one of more of the Copyrighted Works without authorization.

32.     Upon information and belief, Defendants knew or should have known that their acts constituted copyright infringement.

33.     Defendants' infringing conduct was willful within the meaning of the Copyright Act of 1976.

34.     Plaintiff NNG has been damaged by Defendants' conduct, including, but not limited to economic losses.  Plaintiff NNG has no adequate remedy at law to compensate for all of the possible damages stemming from Defendants' conduct.

35.     Plaintiff NNG is entitled to an award of actual or statutory damages for each instance of copyright infringement by Defendants plus attorney's fees, and all associated costs.

## COUNT II

### (Contributory Copyright Infringement against Charania)

36.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

37.     Upon information and belief, Defendant Charania intentionally induced or encouraged the infringement of the Copyrighted Works by Defendant Universal.

38.     As the direct and proximate result of such acts, Plaintiff NNG has suffered, and will continue to suffer, monetary damages and irreparable injury.

39.     Plaintiff NNG is entitled to an award of actual or statutory damages for each instance of contributory copyright infringement by Defendant Charania

plus attorney's fees, and all associated costs.

## COUNT III

### (Vicarious Copyright Infringement against Charania)

40.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

41.     Upon information and belief, Defendant Charania profited directly from the direct copyright infringement by Universal.

42.     Upon information and belief, Defendant Charania had the right and ability to stop or limit such infringement.

43.     As the direct and proximate result of such acts, Plaintiff NNG has suffered, and will continue to suffer, monetary damages and irreparable injury.

44.     Plaintiff NNG is entitled to an award of actual or statutory damages for each instance of vicarious copyright infringement by Defendant Charania plus attorney's fees, and all associated costs.

## COUNT IV

### (Direct and Contributory Violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A) against Universal and Charania)

45.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

46.     Plaintiff NNG employs technological protection measures that effectively control access to the Copyrighted Works.

11

47.    Upon information and belief, Defendants created or acquired purchased pirated versions of the Copyrighted Works and code that allows the Copyrighted Works to run on a non-approved device.  Such code overrides or gets around NNG's technological copyright protection measures, and allowed Defendants to circumvent Plaintiff's technological copyright protection measures.

48.    Upon information and belief, Defendants instructed the entity from which it obtained the pirated versions of the software to circumvent the technological copyright protection measures in the software, and/or knew that the entity had to circumvent such protection measures in order to send the pirated software to Universal.

49.    Accordingly, Defendants' actions constitute circumvention of a technological measure, in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A).

50.    Alternatively, Defendants are contributorily liable under 17 U.S.C. § 1201(a)(1)(A) for the above-described entity's actions in circumventing the technological copyright protection measures within the Copyrighted Works.

51.    Plaintiff NNG has sustained monetary damage, loss, and injury as a result of Defendants' violation in an amount to be determined at trial.

52.    Plaintiff NNG is entitled to recover the actual damages it has suffered and/or any profits gained by Defendants pursuant to 17 U.S.C. § 1203(c)(2).

Alternatively, Plaintiff NNG is entitled to the maximum statutory damages allowed under 17 U.S.C. § 1203(c)(3). Plaintiff NNG will make its election at the appropriate time before final judgment is entered.

53. Plaintiff NNG is entitled to an injunction against Defendants' violation pursuant to 17 U.S.C. § 1203(b).

54. Plaintiff NNG is further entitled to recover its full costs and reasonable attorney's fees, pursuant to 17 U.S.C. § 1203(b).

## COUNT V

### (Direct Violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) against Universal and Charania)

55. Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

56. Upon information and belief, Defendants sold the Circumvention Component as part of the Infringing Units, which allowed the Copyrighted Works to run on non-approved devices. Such code overrode and/or gets around NNG's technological copyright protection measures.

57. Upon information and belief, the Circumvention Component is used to circumvent a technological copyright protection measure, since it avoids, bypasses, removes, deactivates, and/or impairs a technological copyright protection measure without the authority of Plaintiff NNG for the purpose of gaining unauthorized access to the Copyrighted Works.

13

58.     The Circumvention Component is installed and sold on each Infringing Unit sold by Defendants.

59.     Each time the navigation software on the Infringing Units is activated, the Circumvention Component circumvents the copyright protection measure verification of the Copyrighted Works and allows the iGo software to run on the device.  As a result, a circumvention of Plaintiff NNG's technological copyright protection measures happens every time the navigation software on one of the Infringing Units is activated.

60.     Without the presence of the Circumvention Component on each of the Infringing Units, the iGo software would not run, because the technological copyright protection measures would prevent the iGo software from running.

61.     Upon information and belief, Defendants included the Circumvention Component within each of the Infringing Units they distributed.

62.     The Circumvention Component comprises a "component or part thereof" prohibited by the DMCA.

63.     As a result, Defendants manufactured, imported, offered to the public, provided, and/or otherwise trafficked in a technology, product, device, component, and/or part thereof that is primarily designed or produced for the purpose of circumventing Plaintiff NNG's technical copyright protection measures that effectively control access to the Copyrighted Works.

64.     Accordingly, Defendants' actions constitute a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2).

65.     Plaintiff NNG has sustained monetary damage, loss, and injury as a result of Defendants' violation in an amount to be determined at trial.

66.     Plaintiff NNG is entitled to recover the actual damages it has suffered and/or any profits gained by Defendants pursuant to 17 U.S.C. § 1203(c)(2). Alternatively, Plaintiff NNG is entitled to the maximum statutory damages allowed under 17 U.S.C. § 1203(c)(3).   Plaintiff NNG will make its election at the appropriate time before final judgment is entered.

67.     Plaintiff NNG is entitled to an injunction against Defendants' violation pursuant to 17 U.S.C. § 1203(b).

68.     Plaintiff NNG is further entitled to recover its full costs and reasonable attorney's fees, pursuant to 17 U.S.C. § 1203(b).

## COUNT VI

### (Direct Violations of the Digital Millennium
### Copyright Act, 17 U.S.C. § 1201(b) against Universal and Charania)

69.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

70.     Upon information and belief, every time a version of the Copyrighted Works is allowed to run on an Infringing Unit (through the circumvention procedure described above), a copy of all or some of that software is copied into

the unit's random access memory ("RAM").  This copying is neither permitted nor licensed by Plaintiff NNG and is a violation of 17 U.S.C. § 106.

71.    As a result, Defendants also manufactured, imported, offered to the public, provided, and/or otherwise trafficked in a technology, product, device, component, and/or part thereof that is primarily designed or produced for the purpose of circumventing protection afforded by NNG's technical copyright measures that effectively protect a right of Plaintiff in the Copyrighted Works.

72.    Accordingly, Defendant Universal's actions constitute a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(b).

73.    Plaintiff NNG has sustained monetary damage, loss, and injury as a result of Defendants' violation in an amount to be determined at trial.

74.    Plaintiff NNG is entitled to recover the actual damages it has suffered and/or any profits gained by Defendants pursuant to 17 U.S.C. § 1203(c)(2). Alternatively, Plaintiff NNG is entitled to the maximum statutory damages allowed under 17 U.S.C. § 1203(c)(3). Plaintiff NNG will make its election at the appropriate time before final judgment is entered.

75.    Plaintiff NNG is entitled to an injunction against Defendants' violation pursuant to 17 U.S.C. § 1203(b).

76.    Plaintiff NNG is further entitled to recover its full costs and reasonable attorney's fees, pursuant to 17 U.S.C. § 1203(b).

## COUNT VII

### (Direct Trademark Counterfeiting, 15 U.S.C. §§ 1114, 1116(d)(1), and 1117, against Universal and Charania)

77.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

78.     Defendants have used a spurious mark that is identical or substantially indistinguishable from Plaintiff NNG's registered IGO PRIMO mark and which constitutes use of a counterfeit mark in violation of 15 U.S.C. § 1114.

79.     Defendants sold navigation software with each of the Infringing Units.

80.     Defendants used a mark identical to Plaintiff NNG's registered IGO PRIMO and IGO MY WAY marks on the navigation software they sold with the Infringing Units.

81.     Defendants used the marks on goods covered by Plaintiff's federal trademark registrations for the marks.

82.     Defendants engaged in these activities willfully and with knowledge of Plaintiff NNG's rights.

83.     Defendants' acts of infringement and unfair competition have caused NNG to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

84.     Plaintiff NNG is entitled to recovery of its actual damages and Defendants' profits or, at Plaintiff NNG's election, up to $2,000,000 in statutory

damages.

## COUNT VIII

### (Direct Trademark Infringement, 15 U.S.C. § 1114,
### against Universal and Charania)

85.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

86.     Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, and/or deception as to the source, origin, and/or sponsorship of the navigation software and/or services contained within Universal products, and to falsely mislead consumers into believing that the navigation software and/or services contained within those products are those of, affiliated with, and/or approved by, Plaintiff NNG.

87.     Accordingly, Defendants' unauthorized use of the IGO PRIMO and I GO MY WAY marks constitutes an infringement of Plaintiff NNG's registered trademarks in violation of 15 U.S.C. § 1114.

88.     Defendants' acts of infringement and unfair competition have caused Plaintiff NNG to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

89.     Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

90.     Defendants' acts of infringement, unless enjoined by this Court, will

continue to cause NNG to sustain irreparable damage, loss and injury, for which NNG has no adequate remedy at law.

## COUNT IX

### (Contributory Trademark Infringement and Counterfeiting under the Lanham Act, 15 U.S.C § 1114(a), against Charania)

91.    Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

92.    Upon information and belief, Defendant Charania intentionally induced the trademark counterfeiting and infringement committed by Universal.

93.    Defendant Charania exercised direct control over Defendant Universal's choice of software used in its navigation devices, and personally authorized, directed or ratified the use of the infringing iGo Marks on the Infringing Units.

94.    As the direct and proximate result of such acts, Plaintiff NNG has suffered, and will continue to suffer, monetary damages and irreparable injury to its trademark and business.

95.    Plaintiff NNG is entitled to injunctive relief and an award of actual damages, trebled, and attorneys' fees and costs, from Defendant Charania arising from his contributory infringement of the iGo Marks.

## COUNT X

## (Vicarious Trademark Infringement and Counterfeiting
## under the Lanham Act, 15 U.S.C § 1114(a), against Charania)

96.     Plaintiff NNG incorporates the foregoing allegations as though fully set forth herein.

97.     As the President of Universal, Charania had the right and ability to supervise Universal's acts constituting trademark infringement and counterfeiting.

98.     Upon information and belief, as the President of Universal, Charania received a direct financial benefit from Universal's infringement.

99.     Therefore, Charania is vicariously liable for Universal's acts of trademark infringement and counterfeiting.

100.   As the direct and proximate result of such acts, Plaintiff NNG has suffered, and will continue to suffer, monetary damages and irreparable injury to its trademark and business.

101.   Plaintiff NNG is entitled to injunctive relief and an award of actual damages, trebled, and attorneys' fees and costs, from Charania arising from his vicarious infringement of the iGo Marks.

## JURY DEMAND

102.   Pursuant to Federal Rule of Civil Procedure 38, GRI demands trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NNG requests that the Court:

1.      Enter judgment in favor of Plaintiff and against Defendants on all claims;

2.      Enter a preliminary and permanent injunction enjoining Defendants and their respective officers, agents, servants and those persons in active concert or participation from directly or indirectly (a) infringing Plaintiff NNG's rights in the Copyrighted Works; (b) violating the DMCA with respect to Plaintiff NNG's software; and (c) infringing or engaging in counterfeiting of NNG's iGO Marks;

3.      Enter a preliminary and permanent injunction requiring that Defendants remove all copies of the Copyrighted Works from the Infringing Units and from any other units or products manufactured or sold by Defendants that may contain the Copyrighted Works;

4.      Enter an order of impoundment pursuant to 17 U.S.C § 503(a) (1)(A) impounding all devices containing copies of the Plaintiff's Copyrighted Works, which are in Defendants' possession, custody, control, or within its distribution channels;

5.      Enter an order of impoundment pursuant to 17 U.S.C. § 1203(b)(2) impounding any device or product in Defendants' possession, custody, or control that has been involved in Defendants' circumvention of Plaintiff NNG's

technological protection measures;

6.      Enter an order requiring the destruction, pursuant to 15 U.S.C. § 1118, of: (i) all labels, signs, prints, packages, wrappers, receptables, and advertisements in the possession of Defendants bearing Plaintiff NNG's trademarks, (ii) any materials containing false designations of origin, false descriptions, or misrepresentations of fact concerning Plaintiff NNG and/or its products, (iii) any materials bearing any reproduction, counterfeit, copy, or colorable imitation of Plaintiff NNG's trademarks; and (iv) all plates, molds, matrices, and other means of making the same;

7.      Enter an order of impoundment pursuant to 17 U.S.C § 503(a)(1)(C) impounding all records documenting the manufacture, sale, or receipt of things involved in the infringement of the Copyrighted Works;

8.      Enter judgment in favor of Plaintiff and against Defendants for damages as follows: (a) the amount of Plaintiff's actual damages and Defendants' profits, or statutory damages, pursuant to 17 U.S.C. § 504, at the election of Plaintiff; (b) the amount of Plaintiff's actual damages and profits derived from Defendants' trafficking in components that are primarily designed for circumvention of Plaintiff NNG's protection measures, or statutory damages for each violation in an amount provided by law, in accordance with 17 U.S.C. § 1203(c)(1)(A), at the election of Plaintiff; and (c) the amount of Plaintiffs' actual

damages and profits derived from Defendants' infringement of Plaintiff NNG's marks, and the costs of the action, in accordance with 15 U.S.C. § 1117(a), and that such amounts be trebled pursuant to 15 U.S.C. § 1117(b), or, at Plaintiff's election, statutory damages in the amount of $2,000,000;

9.      Enter judgment in favor of Plaintiff and against Defendants for Plaintiff's costs and attorneys' fees incurred in this action, pursuant to 17 U.S.C. § 505 and 1203(b) and 15 U.S.C. § 1117(a)(3); and

10.     For entry of judgment that Plaintiff NNG be granted such other relief as the Court deems just, equitable and proper.

Dated:  December 12, 2016

Respectfully submitted:

*/s/ Tammy J. Dunn*
Tammy J. Dunn
Attorney-in-Charge
TX State Bar No. 24045660
SDTX No. 562006
Email:  Terry@oshaliang.com
**OSHA LIANG LLP**
909 Fannin St., Suite 3500
Houston, TX  77010
Phone:  (713) 228-8600
Fax:  (713) 228-8778

OF COUNSEL:

MICHAEL J. MCCUE
California Bar No. 296425)
(seeking admission *pro hac vice*)
Email:  mmccue@lrrc.com
AARON D. JOHNSON
California Bar No. 261747
(seeking admission *pro hac vice*)
Email:  adjohnson@lrrc.com
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
4300 Bohannon Drive, Suite 230
Menlo Park, California 94025
(650) 391-1380 (Tel.)
(650) 391-1395 (Fax)

*Attorneys for Plaintiff*